HIGGINBOTHAM, J.
In this personal injury case, the trial court granted summary judgment in favor of the defendant dismissing plaintiff's claims as to them.
FACTS AND PROCEDURAL HISTORY
On December 7, 2012, in conformance with a transportation services agreement with Restoration Hardware, Inc., Ozark Motor Lines, Inc. picked up an Ozark trailer from Restoration Hardware, in Maryland, that was preloaded and sealed by Restoration Hardware laborers. Ozark conducted a pre-trip inspection, and then transported the trailer to Baton Rouge, Louisiana. Ozark delivered the trailer to Exel Inc.'s distribution facility in Baton Rouge on December 11, 2012, to be unloaded by Exel. On that day, after the seal *535 was broken by Exel, Mr. Alex Talbert, an employee of Exel, was unloading the trailer with his co-worker, Mr. Ryan August. Mr. Talbert was removing a large box containing a table located on the top of several other smaller boxes when the boxes below shifted causing several boxes to fall on him. After the incident, Mr. Talbert filed a petition for damages contending that the trailer had been improperly loaded or loaded with defective boxes causing boxes to fall on him, which caused him injury. In Mr. Talbert's petition, he named Restoration Hardware and Ozark as defendants. Eventually, Restoration Hardware was dismissed from the suit by Mr. Talbert.
On October 23, 2015, Ozark filed a motion for summary judgment, which was denied by the trial court. On January 9, 2017, Ozark filed a second motion for summary judgment attaching additional documents to its motion. The matter came before the trial court on April 17, 2017, after which the trial court granted Ozark's motion for summary judgment and dismissed Mr. Talbert's claims. It is from this judgment that Mr. Talbert appeals, contending that the trial court erred in finding that Ozark's second motion for summary judgment was not precluded under issue preclusion and in finding that no issue of material fact remained.
STANDARD OF REVIEW
When reviewing summary judgments, appellate courts conduct a de novo review of the evidence, using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Boudreaux v. Vankerkhove, 2007-2555 (La. App. 1st Cir. 8/11/08), 993 So.2d 725, 729-30. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3). The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ. P. art. 966(A)(2).
The burden of proof is on the mover. La. Code Civ. P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion, the mover's burden does not require that all essential elements of the adverse party's claim, action, or defense be negated. Rather, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. P. art. 966(D)(1). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. The Shaw Group v. Kulick, 2004-0697 (La. App. 1st Cir. 4/8/05), 915 So.2d 796, 800, writ denied, 2005-1205 (La. 11/28/05), 916 So.2d 148.
As Mr. Talbert is asserting a claim of negligence, he has the burden of proving the five elements of the duty-risk analysis: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant s substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and *536 (5) actual damages. Bufkin v. Felipe's Louisiana, LLC, 2014-0288 (La. 10/15/14), 171 So.3d 851, 855. A negative answer to any of the elements of the duty/risk analysis prompts a no-liability determination. Joseph v. Dickerson, 99-1046 (La. 1/19/00), 754 So.2d 912, 916. Duty is a question of law. The inquiry is whether a plaintiff has any law-statutory, jurisprudential, or arising from general principles of fault-to support his or her claim. Bowman v. City of Baton Rouge/Parish of East Baton Rouge, 2002-1376 (La. App. 1st Cir. 5/9/03), 849 So.2d 622, 627, writ denied, 2003-1579 (La. 10/3/03), 855 So.2d 315. In negligence cases, there is an almost universal duty on the part of a defendant to use reasonable care to avoid injury to another. Rando v. Anco Insulations Inc., 2008-1163 (La. 5/22/09), 16 So.3d 1065, 1086. When no factual dispute exists and no credibility determinations are required, the legal question of the existence of a duty is appropriately addressed by summary judgment. Boland v. West Feliciana Parish Police Jury, 2003-1297 (La. App. 1st Cir. 6/25/04), 878 So.2d 808, 816, writ denied, 2004-2286 (La. 11/24/04), 888 So.2d 231.
LAW AND ANALYSIS
In his first assignment of error, Mr. Talbert contends that Ozark's second motion for summary judgment filed on January 9, 2017, should be precluded under the principle of issue preclusion in La. R.S. 13:4231 because it is the same as Ozark's first motion for summary judgment filed on October 23, 2015, wherein the trial court denied the motion and found that there were issues of material fact as to whether Ozark had a duty to inspect the load. Louisiana Revised Statute 13:4231 embraces the broad usage of the phrase "res judicata" to include both claim preclusion (res judicata) and issue preclusion (collateral estoppel). The denial of an initial motion for summary judgment does not bar a second summary judgment motion under the doctrine of res judicata. See Bozarth v. State LSU Medical Center/Chabert Medical Center, 2009-1393 (La. App. 1st Cir. 2/12/10), 35 So.3d 316, 323. The denial of a motion for summary judgment is an interlocutory judgment, which the trial court may change at any time up to final judgment. Berry v. Paul Revere Life Insurance Company, 2008-0945 (La. App. 1st Cir. 7/9/09), 21 So.3d 385, 386, n.1, writs denied, 2009-2220, 20092241 (La. 12/18/09), 23 So.3d 942, 945. An interlocutory judgment cannot serve as the basis for a plea of res judicata. Spiers v. Roye, 2004-2189 (La. App. 1st Cir. 2/10/06), 927 So.2d 1158, 1170, n.9 (per curiam; on rehearing). Furthermore, the jurisprudence of this and other circuits specifically allows a trial court to consider a second motion for summary judgment after a first motion for summary judgment on the same issue has been denied. Bozarth, 35 So.3d at 323. Therefore, we find no merit to Mr. Talbert's first assignment of error.
In his remaining assignments of error, Mr. Talbert contends that the trial court erred in finding no issue of material fact remained regarding the negligence of Ozark. Specifically, Mr. Talbert argues that under 49 CFR 392.9, issues of material fact remain as to whether Ozark had a duty to inspect the load for safety, and that the trial court erred in finding a lack of evidence that shifting during transit caused the boxes to fall on Mr. Talbert when his expert opined that the boxes fell because of a change in the structural configuration during transit.
In its motion for summary judgment, Ozark argues that there was no evidence of a duty owed by Ozark, and even if the court found a duty on the part of Ozark, there was no evidence of a breach of that *537 duty or causation. Neither side disputes that Ozark picked up a preloaded sealed trailer from Restoration Hardware, did a pre-trip inspection which did not involve breaking the seal or reviewing the load, and transported the trailer to Exel where employees of Exel removed the seal and unloaded the trailer. Ozark pointed out that it was not involved in the loading or unloading of the trailer and contends that because Ozark was not present during the loading or unloading of the trailer, it had neither the opportunity, nor the obligation to inspect the load prior to, during, or after its transport.
In response, Mr. Talbert contends that Ozark had a duty to inspect the load and confirm that it was properly distributed and adequately secured based on 49 C.F.R. 392.9, and that Ozark breached that duty because Ozark did not break the seal and inspect the load. 49 C.F.R. 392.9 provides:
a) General. A driver may not operate a commercial motor vehicle and a motor carrier may not require or permit a driver to operate a commercial motor vehicle unless-
(1) The commercial motor vehicle's cargo is properly distributed and adequately secured as specified in §§ 393.100 through 393.136 of this subchapter.
(2) The commercial motor vehicle's tailgate, tailboard, doors, tarpaulins, spare tire and other equipment used in its operation, and the means of fastening the commercial motor vehicle's cargo, are secured; and
(3) The commercial motor vehicle's cargo or any other object does not obscure the driver's view ahead or to the right or left sides (except for drivers of self-steer dollies), interfere with the free movement of his/her arms or legs, prevent his/her free and ready access to accessories required for emergencies, or prevent the free and ready exit of any person from the commercial motor vehicle's cab or driver's compartment.
(b) Drivers of trucks and truck tractors. Except as provided in paragraph (b)(4) of this section, the driver of a truck or truck tractor must-
(1) Assure himself/herself that the provisions of paragraph (a) of this section have been complied with before he/she drives that commercial motor vehicle;
(2) Inspect the cargo and the devices used to secure the cargo within the first 50 miles after beginning a trip and cause any adjustments to be made to the cargo or load securement devices as necessary, including adding more securement devices, to ensure that cargo cannot shift on or within, or fall from, the commercial motor vehicle; and
(3) Reexamine the commercial motor vehicle's cargo and its load securement devices during the course of transportation and make any necessary adjustment to the cargo or load securement devices, including adding more securement devices, to ensure that cargo cannot shift on or within, or fall from, the commercial motor vehicle. Reexamination and any necessary adjustments must be made whenever-
(i) The driver makes a change of his/her duty status; or
(ii) The commercial motor vehicle has been driven for 3 hours; or
(iii) The commercial motor vehicle has been driven for 150 miles, whichever occurs first.
(4) The rules in this paragraph (b) do not apply to the driver of a sealed commercial motor vehicle who has been ordered not to open it to inspect its cargo or to the driver of a commercial *538 motor vehicle that has been loaded in a manner that makes inspection of its cargo impracticable.
It is Ozark's position that because the trailer was sealed, subsection four of the regulation is applicable. Subsection four provides that the rules of paragraph b do not apply to the driver of a sealed commercial motor vehicle who has been ordered not to open it in order to inspect its load or to the driver of a commercial motor vehicle that has been loaded in a manner that makes inspection of its load impracticable.
When Ozark picked up the trailer it was already sealed, and according to the deposition of Justin Southerland, Mr. Talbert's supervisor, the seal was still intact when the trailer arrived at Exel for unloading. Mr. Southerland stated that it is Exel's policy that the load is inspected upon opening of the trailer, and if there is any damage noticed upon opening the trailer, then pictures are taken and the damage is reported. Mr. Southerland noted that the seal is used to keep the integrity that the trailer had never been opened until the truck arrives.
In his deposition, Mr. Larry Hendricks, an employee with Ozark, stated on at least four occasions the Ozark driver was not allowed to review the load after he picked it up according to the instructions of Restoration Hardware and, that Ozark would not break the seal without permission of Restoration Hardware. Mr. Bryan Hooper, the corporate representative of Restoration Hardware, acknowledged in his deposition that if a carrier requested to inspect a trailer he would comply, but noted that he cannot recall that happening stating, "in my 20 years of distribution, I don't recall a carrier wanting to inspect a load routinely prior to it leaving a yard, provided it's sealed." Mr. Barry Lee Brunstein, a safety consultant in the motor carrier industry, acknowledged that he was sure Restoration Hardware did not intend for Ozark to break the seal, but pointed out that Restoration Hardware would have had no problem if Ozark wanted to.
After review of the evidence, we find that because the trailer was sealed, Ozark was instructed not to open the seal, and Ozark's role was limited to transporting the trailer, Ozark had no duty under 49 C.F.R. 392.9 to inspect the trailer and/or confirm that the load was secured with restraints. The fact that Restoration Hardware would have allowed the driver to break the seal if he had requested to do so, does not negate the applicability of subsection four of the regulation. Thus, Ozark's duty in transporting the trailer was of reasonable care and as we will address below, there was no evidence submitted in opposition to Ozark's motion for summary judgment to indicate that Ozark breached that duty.
In his deposition, Mr. Southerland pointed out that there were no issues reported to him at the time the trailer was opened, and the record reveals that there was no notable event recorded during the transport. In his deposition, Mr. Talbert stated that he did not recall if he saw the trailer being opened or the seal being removed. According to Mr. Talbert, he and Mr. August were trying to remove a large box containing a table that was jammed. Mr. Talbert stated that he was pushing the box towards Mr. August causing the lighter boxes to crush underneath it and fall on top of him. Mr. Talbert acknowledged that he knew of no acts of negligence on the part of Ozark that caused his injuries. The boxes that fell on Mr. Talbert were in the second group of boxes, as Exel employees had already unloaded the boxes closest to the rear.
*539 In favor of his position that Ozark breached a duty and was the cause in fact of Mr. Talbert's accident, Mr. Talbert attached the affidavit of A.J. McPhate, a mechanical engineer, who concluded that in his opinion the boxes fell due to a change in the structural configuration during transit. Because Ozark did not object to Mr. McPhate's affidavit, the affidavit is in evidence and must be considered. See La. Code Civ. P. art. 966D(2). See also Thompson v. Center for Pediatric and Adolescent Medicine, L.L.C., 2017-1088 (La. App. 1 Cir. 3/15/18), 244 So.3d 441, 2018 WL 1324414, *5. The trial court correctly considered Mr. McPhate's affidavit, however, unlike in Thompson, the trial court also considered the deposition of Mr. McPhate, which was attached to Ozark's motion for summary judgment, and found no factual basis in the record for Mr. McPhate's opinion that the boxes shifted during transport.[1]
In his deposition, Mr. McPhate noted that he was not sure how the trailer was loaded, did not know the type of boxes used, and that outside of Mr. Talbert's testimony, he was not aware of any conclusive evidence that the boxes shifted during transport. He further acknowledged that he had no factual evidence to support his theory of shifting and there was no evidence that the contents of the boxes moved. Mr. McPhate based his opinion on the fact that something changed, because the boxes supporting the table were stable at the time Restoration Hardware loaded the trailer. Mr. McPhate admitted that Mr. Talbert, in pulling the heavy box, could have caused the boxes to tumble. Finally, as Mr. Brunstein pointed out, placing the heavier box on top was a "bad form in loading." Mr. McPhate, in his affidavit, stated that the loading of the heavy boxes on top of the stack of boxes contributed significantly to the forces of transit, and the heavier box should have been loaded on the floor.
Mr. McPhate stated that the contents of the boxes may have shifted significantly during transit. Mr. McPhate's opinion is not sufficient to raise an issue of material fact when there is no evidence in the record that Ozark breached a duty of reasonable care. It takes more than the existence of a mere possibility to prove a fact by a preponderance of the evidence in order to defeat summary judgment. See Hawkins v. Fowler, 2011-1495 (La. App. 1st Cir. 5/2/12), 92 So.3d 544, 547-48, writ denied, 2012-1449 (La. 10/8/12), 98 So.3d 860. See also Hanks v. Entergy Corp., 2006-477 (La. 12/18/06), 944 So.2d 564, 578 ("[p]roof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, shows the fact sought to be proved is more probable than not.") The record is devoid of any evidence that Ozark in transporting the trailer, failed to exercise reasonable care. There was no evidence introduced of anything unusual happening during the transportation of the trailer. The load was sealed when leaving Maryland and sealed when arriving in Baton Rouge, and when *540 the seal was broken, there was nothing presented to the supervisor to indicate that a problem occurred during transit. After reviewing Mr. McPhate's affidavit as well as his deposition, we agree with trial court's conclusion that there is a lack of a factual basis for Mr. McPhate's opinion regarding causation. See Mitchell v. Aaron's Rentals, 2016-0619 (La. App. 1st Cir. 4/12/17), 218 So.3d 167, 176. Therefore, Mr. Talbert failed to produce factual support sufficient to establish the existence of a genuine issue of material fact. See La. C.C.P. art. 966(D)(1).
As Ozark set forth evidence pointing out to the court that there is an absence of factual support that it owed a duty to Mr. Talbert to inspect the contents of the trailer under 49 C.F.R. 392.9 or breached the general duty of reasonable care, and Mr. Talbert failed to produce factual support sufficient to satisfy his evidentiary burden of proving the elements of the duty-risk analysis by a preponderance of the evidence, we find the trial court correctly granted Ozark's motion for summary judgment.
CONCLUSION
For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of defendant-appellee, Ozark Motor Lines, Inc., and dismissing the claims of plaintiff-appellant, Mr. Alex Talbert is affirmed. All costs of the appeal are assessed to Mr. Talbert.
AFFIRMED.
Penzato, J. concurs

In Thompson, this court held that when an affidavit of an expert is introduced in a motion for summary judgment and is admitted into evidence, the trial court is statutorily obligated to consider the expert's opinion regardless of how conclusory it may be. Thompson, 2018 WL 1324414, *5 In Thompson, which was a medical malpractice case, this court determined that the affidavit of plaintiff's expert wherein the expert opined that the defendant's treatment of plaintiff fell below the standard of care was sufficient to raise a genuine issue of material fact. Thompson, 2018 WL 1324414, *5. In this matter, unlike in Thompson, the evidence includes not only the conclusory affidavit of Mr. McPhate, but also his deposition testimony which clearly shows that his opinion is not based upon facts which can be proven in this case.