HIGGINBOTHAM, J.
*1060 This appeal relates to one of several lawsuits surrounding the Bayou Come sinkhole that developed on August 3, 2012, following the collapse of a salt mine cavern connected with Texas Brine Company, LLC's operation of a brine production well known as Oxy Geismer # 3 Well ("OG3"). Texas Brine appeals the district court's summary judgment dismissal of its third-party tort claims, as well as its indemnity and contribution claims, against the non-operators of an adjacent oil and gas well known as the Adams-Hooker # 1 Well ("AH1"). The dismissed non-operators of the oil and gas well are Reliance Petroleum Corporation, LORCA Corporation, Colorado Crude Company, and Sol Kirschner.[1]
PERTINENT FACTS AND PROCEDURAL HISTORY
The plaintiffs, Pontchartrain Natural Gas System, K/D/S Promix, L.L.C., and Acadian Gas Pipeline (collectively "Pontchartrain"), own and operate natural gas pipelines and storage facilities in the vicinity of property affected by the Bayou Come sinkhole near the Napoleonville Salt Dome in Assumption Parish. After the sinkhole developed, Pontchartrain and other pipeline companies brought several lawsuits against Texas Brine, seeking recovery for damage to their pipelines due to the alleged negligence of Texas Brine in operating the OG3 brine well.
In reply, Texas Brine filed incidental demands against various parties in all of the lawsuits, seeking recovery of its own damages in the form of reimbursement for environmental-response costs paid out by Texas Brine after the sinkhole appeared, litigation expenses, and lost profits, along with claims for indemnity and/or contribution for the damages allegedly sustained by Pontchartrain and the other pipeline companies. The relevant third-party defendants sued by Texas Brine include the owners of the land where the sinkhole occurred, Occidental Chemical Corporation, Occidental Petroleum Corporation, Basic Chemicals Company, LLC, and Occidental VCM, LLC (collectively "Oxy"), and the non-operators of the AH1 oil well: Reliance, LORCA, Colorado Crude, and Kirschner (collectively "the non-operators").
In its incidental demands and attachments to its pleadings filed against Oxy and the non-operators, Texas Brine alleged that some of the acts of negligence that caused the sinkhole occurred as early as 1983, when Oxy first leased property for the commercial oil and gas drilling operations of the AH1 oil well, resulting in the AH1 well's reservoir sharing a common wall with the cavern related to Texas Brine's OG3 brine production well. The non-operators were assigned various working interests in the AH1 oil well and the drilling of the AH1 oil well began in early 1986. Texas Brine contends: (1) that the non-operators jointly shared the "garde" and controlled the operation of the AH1 oil well along with the operators, until the AH1 oil well was plugged and abandoned in 2010; (2) that the non-operators breached their duty to control the AH1 oil well operators; and (3) that the non-operators negligently delegated specific duties to various operators related to pressure monitoring in the AH1 oil well's reservoir.
*1061 Because some of Texas Brine's negligence claims allegedly originated before Louisiana's tort reform legislation became effective in 1996, when strict liability was a form of relief, Texas Brine argues that those claims are governed by pre-96 law and that the rest of its third-party negligence claims are governed by post-96 law.
Reliance brought several motions for summary judgment seeking dismissal of Texas Brine's pre-96 and post-96 tort claims, as well as Texas Brine's indemnity and contribution tort claims. All of the other non-operators and Oxy joined in Reliance's motions and/or filed similar motions of their own, with Oxy reserving its right to arbitration.[2] The non-operators and Oxy argue that Texas Brine's damages for response costs and lost profits did not occur until 2012, when the sinkhole emerged and, thus, any damages sustained by Texas Brine were caused by the sinkhole event rather than some hidden changes that might have occurred underground before the development of the sinkhole. The non-operators maintain that the substantive law in effect at the time that Texas Brine sustained its damages for response costs and lost profits in August 2012 is the law that applies. The non-operators and Oxy further assert that, because Pontchartrain and the other pipeline companies have not claimed that they sustained any of their damages prior to the sinkhole, Texas Brine is unable to prove any pre-sinkhole tort liability on the part of Oxy and the non-operators. Additionally, Oxy and the non-operators point out Texas Brine has admitted some responsibility for the formation of the sinkhole and, therefore, Texas Brine cannot maintain an action based on indemnity or contribution. Texas Brine opposed all of the motions.
After a hearing where multiple motions and exceptions were heard by the district court in several of the pipeline company lawsuits, a judgment was signed on August 28, 2017, granting summary judgment in favor of all of the non-operators and Oxy, dismissing Texas Brine's tort claims based on pre-96 law, including the claims for tort indemnity and contribution, with prejudice. The district court also granted summary judgment in favor of all of the non-operators, dismissing Texas Brine's post-96 law tort claims, including the claims for tort indemnity and contribution, with prejudice. In summary, the district court held that pre-96 tort law did not apply and that the non-operators of the AH1 well were not responsible to Texas Brine for any tort liability, indemnity or contribution. Therefore, the August 28, 2017 judgment effectively dismissed all of Texas Brine's third-party tort claims against the non-operators, finding that the non-operators had absolutely no control or authority over the operations of the AH1 oil well.[3]
Texas Brine appeals, assigning three errors regarding the district court's judgment: (1) the district court erred in deciding on summary judgment that pre-96 law did not apply since Texas Brine presented *1062 evidence that genuine issues concerning underground damage began as early as 1986 and manifested later; (2) the district court erred in concluding that Texas Brine did not have viable tort claims against the non-operators since Texas Brine is seeking reimbursement for remediation costs; and (3) the district court erred in determining that the non-operators did not have a duty to ensure proper monitoring of the AH1 oil well pressure to protect adjacent brine well operators such as Texas Brine.
LAW AND ANALYSIS
A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. Code Civ. P. art. 966(A)(4).
The burden of proof on motion for summary judgment rests on the mover. But if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Instead, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to then produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. P. art. 966(D)(1). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Talbert v. Restoration Hardware, Inc., 2017-0986 (La. App. 1st Cir. 5/31/18), 251 So.3d 532, 535, writ denied, 2018-1102 (La. 10/15/18), 253 So.3d 1304.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the district court's determination of whether summary judgment is appropriate. Thompson v. Center for Pediatric and Adolescent Medicine, L.L.C., 2017-1088 (La. App. 1st Cir. 3/15/18), 244 So.3d 441, 444, writ denied, 2018-0583 (La. 6/1/18), 243 So.3d 1062. Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing a motion for summary judgment, and all doubt must be resolved in the opponent's favor. Id. at 445. As Texas Brine is asserting third-party tort claims against the non-operators, Texas Brine had the burden of proving the elements of tort liability in Louisiana, pursuant to a duty-risk analysis - duty; breach of duty; cause-in-fact; scope of protection; and actual damages. See Bufkin v. Felipe's Louisiana, LLC , 2014-0288 (La. 10/15/14), 171 So.3d 851, 855. See also Rando v. Anco Insulations Inc., 2008-1163 (La. 5/22/09), 16 So.3d 1065, 1086. The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law. Bufkin, 171 So.3d at 855. A negative answer to any of the elements of the duty-risk analysis prompts a no-liability determination. Talbert, 251 So.3d at 536. In negligence cases, there is an almost universal duty on the part of a defendant to use reasonable care to avoid injuring another. Rando, 16 So.3d at 1086.
In the non-operators' motions and supporting documents, they sufficiently pointed out an absence of factual support for one or more elements essential to Texas *1063 Brine's tort claims in that the record was entirely devoid of any evidence that the non-operators took any unreasonable action or inaction with respect to the AH1 oil well that would constitute a breach of any duty owed to Texas Brine. Prior to the drilling of the AH1 oil well, the non-operators entered into an Operating Agreement dated December 16, 1985, that provided that the operator - at that time, the operator was Adams Resources Exploration Corporation ("Adams") - was to have "full control of all operations" and granted Adams the exclusive authority to operate the AH1 oil well. The AH1 oil well was operated from 1986 to 2010 by various operators, during which time the non-operators remained passive working interest owners that never performed any operation on the AH1 oil well.
Pontchartrain and the other pipeline companies sought recovery for damages to their pipeline facilities as a result of the sinkhole formation in August 2012, not any pre-2012 damages. Notably, Texas Brine did not allege that any of its damages were incurred prior to the formation of the sinkhole in 2012. The non-operators pointed out to the district court that Texas Brine could not prove any pre-2012 damages or meaningful acts/omissions by the non-operators that were connected with the AH1 oil well operations and the eventual emergence of the sinkhole. Thus, the burden of proof shifted to Texas Brine to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the non-operators were not entitled to judgment as a matter of law. See La. Code Civ. P. art. 966(D)(1).
To meet its burden, Texas Brine primarily relied on experts' reports that were attached to its opposition memoranda, specifically focusing on one expert's opinion that earth movement due to the depressurization of the AH1 oil well reservoir could have caused continuous damage to the underground pipelines earlier than when the sinkhole occurred. The non-operators timely objected to the use of the experts' opinions as improper summary judgment evidence. The non-operators argued that the experts' opinions could not establish pre-sinkhole negligence and/or possible exposure to damages through pre-96 law on strict liability, since none of the pipeline companies nor Texas Brine had claimed any of their damages occurred until after the appearance of the sinkhole in 2012. The non-operators also objected because the experts' opinions focused on possible damage to Oxy's underground property prior to the sinkhole's emergence, rather than any property actually owned by Texas Brine.
We note that Texas Brine's reliance on conclusions set forth in unverified experts' reports that have been attached to pleadings or memoranda are inappropriate summary judgment evidence. See La. Code Civ. P. art. 966(A)(4). However, even if we were to accept Texas Brine's experts' statements in reports and depositions as credible, we find that the experts' opinions only establish the mere possibility that damage could have occurred to Oxy's underground property sometime prior to the occurrence of the sinkhole. Those experts' opinions are wholly irrelevant as to any actions or omissions by the non-operators of the AH1 oil well, and do not raise any genuine issue of material fact as to any damage to property owned by Texas Brine. The record reveals that all of Texas Brine's property and/or equipment was allegedly damaged after the sinkhole occurred, and the remaining third-party tort claims concerning litigation expenses, lost profits, and environmental-response costs certainly occurred after the emergence of the sinkhole in August 2012. Thus, the substantive law in effect at that time applies. Proof that establishes only possibility, *1064 speculation, or unsupported probability does not suffice to establish a tort claim. See Todd v. State Through Department of Social Services, Office of Community Services, 96-3090 (La. 9/9/97), 699 So.2d 35, 43. Therefore, we find that the district court did not err in granting summary judgment in favor of the non-operators and dismissing all of Texas Brine's third-party tort claims, including indemnity and contribution, against each of the non-operators.
CONCLUSION
The August 28, 2017 summary judgment dismissing Texas Brine's incidental demands for pre-96 and post-96 tort claims, including indemnity and contribution, against the non-operators of the Adams-Hooker # 1 oil and gas well, Reliance Corporation, LORCA Corporation, Colorado Crude Company, and Sol Kirschner, is affirmed. All costs of this appeal are assessed to Texas Brine Company, LLC.
AFFIRMED.
McClendon, J. concurs.
Pettigrew, J. concurs.

The insurer for Reliance, Chicago Insurance Company, was also dismissed in the summary judgment.

Oxy maintains that all of Texas Brine's claims against it - both in tort and in contract - are subject to arbitration. One of the operators of the AH1 well, Browning Oil Company, filed similar motions for summary judgment against Texas Brine, which was joined by Legacy Vulcan, LLC. Additionally, Reliance filed a separate motion for summary judgment regarding Texas Brine's breach of contract claims against the non-operators. However, the outcomes of all of those additional motions and Oxy's argument concerning arbitration are not relevant to this particular appeal.

The August 28, 2017 judgment also granted Oxy's motion for partial summary judgment and dismissed Texas Brine's claims under pre-96 law against Oxy. Oxy responded to the instant appeal; however, Texas Brine does not specifically seek review of that ruling in this particular appeal. Therefore, that portion of the August 28, 2017 judgment is not before this court at this time.