STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2023 CA 1244

MINNIE JACKSON McKAY

VERSUS

HOSPITAL SERVICE DISTRICT NO. 1 OF TANGIPAHOA PARISH
D/B/A NORTH OAKS HEALTH SYSTEM AND NORTH OAKS
MEDICAL CENTER

JUDGMENT RENDERED: _____ OCT 1 1 2024 _____

* * * * * * *

Appealed from the Twenty-First Judicial District Court
Parish of Tangipahoa • State of Louisiana
Docket Number 2023-0000591 • Division "C"

The Honorable Erika W. Sledge, Presiding Judge

* * * * * * *

| | |
|---|---|
| William R. Mustian, III<br>Metairie, Louisiana | COUNSEL FOR APPELLANT<br>PLAINTIFF—Minnie Jackson McKay |
| | |
| Craig J. Robichaux<br>Elisia S. Tipton<br>Mandeville, Louisiana | COUNSEL FOR APPELLEE<br>DEFENDANT—Hospital Service<br>District No. 1 of Tangipahoa Parish<br>d/b/a North Oaks Health System and<br>North Oaks Medical Center |

* * * * * * *

BEFORE: WELCH, LANIER, WOLFE, GREENE, AND STROMBERG, JJ.

**WELCH, J.**

In this medical malpractice suit, the plaintiff, Minnie Jackson McKay, appeals a summary judgment rendered in favor of the defendant, Hospital Service District No. 1 of Tangipahoa Parish d/b/a North Oaks Health System and North Oaks Medical Center (hereinafter, "North Oaks"), that dismissed her claims against North Oaks with prejudice. For the following reasons, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On July 11, 2019, Ms. McKay was found lying in her bed suffering from "noted jerking motions," which her family called "abnormal behavior." Acadian Ambulance Service ("Acadian Ambulance") was called to her home, where emergency medical services ("EMS") personnel transported her to the North Oaks emergency room (sometimes hereinafter "ER"). Upon arrival, she was placed in an emergency room bed located in a designated stroke area. Ms. McKay was later admitted to North Oaks hospital on July 12, 2019, where hospital personnel noted a head injury, *i.e.*, a large hematoma on her forehead and left cheek that had not been observed or noted on her medical charts when she arrived at the emergency room on July 11, 2019. Ms. McKay was discharged on July 15, 2019.

Thereafter, on February 11, 2020, Ms. McKay filed claims for damages and requested to establish a medical review panel ("MRP"), naming North Oaks as defendant. Ms. McKay claimed that North Oaks' treatment of her fell below the applicable standard of care in the risk of fall assessment and prevention, which resulted in Ms. McKay suffering from a head injury as a result of a fall or other event only explainable by North Oaks.

On October 6, 2022, the MRP issued an opinion in which it unanimously found that the "evidence presented does not support the conclusion that [North Oaks] breached standards of care in its care and treatment of [Ms.] McKay." The MRP gave three reasons for this conclusion:

1. The patient has presented no medical evidence that she was dropped or otherwise handled inappropriately at [North Oaks].

2. The assessment and treatment rendered to the patient at [North Oaks] after her arrival there on July 11, 2019 [were] appropriate and well within acceptable standards of care.

3. There are logical explanations for the facial hematoma other than an undisclosed fall or mishandling at the hospital.

On February 27, 2023, Ms. McKay filed a petition for damages in which she made the same claims against North Oaks as in the request for the MRP. Thereafter, North Oaks filed a motion for summary judgment, arguing that Ms. McKay had not identified an expert who could establish a breach of the standard of care by North Oaks, which would have resulted in her damages. Ms. McKay opposed North Oaks' motion for summary judgment and filed the expert affidavit of Dr. Donald Marks in support of her opposition. In reply, North Oaks objected to the affidavit of Dr. Marks, arguing that his opinions were irrelevant, based on insufficient facts, and not competent summary judgment evidence.

Following a hearing, the trial court sustained North Oaks' objection to Dr. Marks' expert affidavit, rejected the affidavit as inadmissible and based on insufficient and inadequate facts, and granted summary judgment in favor of North Oaks. The trial court signed a judgment in conformity therewith on September 6, 2023, granting summary judgment in favor of North Oaks and against Ms. McKay and dismissing Ms. McKay's claims against North Oaks with prejudice. Ms. McKay now appeals,[1] assigning error to the trial court's exclusion of the affidavit of Dr. Marks, grant of summary judgment in favor of North Oaks despite the existence of genuine issues of material fact, and failure to apply the doctrine of *res ipsa loquitur*.

---

[1] Ms. McKay timely filed a motion for a devolutive appeal on September 13, 2023. The trial court signed an order of appeal on September 21, 2023, notice of which was transmitted by the Clerk of Court to the parties on September 25, 2023.

## SUMMARY JUDGMENT[2]

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. **Murphy v. Savannah**, 2018-0991 (La. 5/8/19), 282 So.3d 1034, 1038. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); **Campbell v. Dolgencorp, LLC**, 2019-0036 (La. App. 1 Cir. 1/9/20), 294 So.3d 522, 526.

---

[2] Louisiana Code of Civil Procedure article 966 was recently amended by 2023 La. Acts No. 317, § 1 (eff. Aug. 1, 2023), and 2023 La. Acts No. 368, § 1 (eff. Aug. 1, 2023). However, we must apply the prior version of La. C.C.P. art. 966 that was in effect on July 6, 2023, when North Oaks filed its motion for summary judgment. See, e.g., **Knox v. Am. Nat'l Ins. Co.**, 2023-0758 (La. App. 1 Cir. 5/9/24), 2024 WL 2097177, *3 n.5 (unpublished).

First, we note that Act 368's amendments to La. C.C.P. art. 966(G) are not applicable here. See 2023 La. Acts No. 368, § 1 (eff. Aug. 1, 2023). Next, Act 317 amended La. C.C.P. art. 966(A)(4)(a) to expand the exclusive list of supporting documents that are considered competent evidence in support of or in opposition to a motion for summary judgment. Act 317 also amended La. C.C.P. art. 966(A)(4)(a) and (D)(2) to now permit such supporting documents to be "filed or referenced" and mandates that a trial court shall consider only those documents "filed or referenced." As amended, La. C.C.P. art. 966(A)(4)(b) now provides that any documents listed in subparagraph (a) that have been previously filed into the record of the cause may be specifically referenced and considered in support of or in opposition to a motion for summary judgment by listing with the motion or opposition the document by title and date of filing. Additionally, the party shall concurrently with the filing of the motion or opposition furnish to the court and the opposing party a copy of the entire document with the pertinent part designated and the filing information. See 2023 La. Acts No. 317, § 1 (eff. Aug. 1, 2023); **Ricketson v. McKenzie**, 2023-0314 (La. App. 1 Cir. 10/4/23), 380 So.3d 1, 4-5. This court has determined that the 2023 amendments to La. C.C.P. art. 966 (that may be applicable in any given matter) are substantive and cannot be applied retroactively. See La. C.C.P. art. 966, Comments--2023, Comment (f); **Martin v. ISC Constructors, L.L.C.**, 2023-0707 (La. App. 1 Cir. 3/13/24), 387 So.3d 630, 634 n.5; **Ricketson**, 380 So.3d at 6. In cases where motions for summary judgment have been filed *after* the August 1, 2023 effective date, this court applies the version of La. C.C.P. art. 966 in effect on the date the motions for summary judgment were "submitted and heard." See **Martin**, 387 So.3d at 634 n.5.

Here, North Oaks filed its motion for summary judgment on July 6, 2023, *prior to* the August 1, 2023 effective date of Act 317. Ms. McKay filed her opposition on August 8, 2023, and the hearing on North Oaks' motion was held on August 28, 2023, *after* the August 1, 2023 effective date of Act 317. Ultimately, however, when North Oaks filed its motion for summary judgment on July 6, 2023, La. C.C.P. art. 966(A)(4) and (D)(2) allowed a court to consider only those listed supporting documents filed in support of or in opposition to the specific motion for summary judgment under consideration. Although Act 317 amended La. C.C.P. art. 966(A)(4)(a), (4)(b), and (D)(2) to provide a new list of supporting documents and a procedure for reference to documents previously filed into the record, those amendments are substantive and cannot be applied retroactively. Thus, we must apply the prior version of La. C.C.P. art. 966 that was in effect on July 6, 2023, when North Oaks filed its motion for summary judgment. See, e.g., **Knox**, 2024 WL 2097177 at *3 n.5.

4

The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1); **Lucas v. Maison Insurance Co.**, 2021-1401 (La. App. 1 Cir. 12/22/22), 358 So.3d 76, 84. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Instead, after meeting his initial burden of showing that there are no genuine issues of material fact, that mover may point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, summary judgment shall be granted unless the adverse party can produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1); **Lucas**, 358 So.3d at 84.

Appellate courts review the grant or denial of a motion for summary judgment *de novo* using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. **Leet v. Hospital Service District No. 1 of East Baton Rouge Parish**, 2018-1148 (La. App. 1 Cir. 2/28/19), 274 So.3d 583, 587. In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether or not there is a genuine issue of material fact. **Collins v. Franciscan Missionaries of Our Lady Health System, Inc.**, 2019-0577 (La. App. 1 Cir. 2/21/20), 298 So.3d 191, 194, writ denied, 2020-00480 (La. 6/22/20), 297 So.3d 773. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Chapman v. Haynes**, 2022-0288 (La. App. 1 Cir. 9/16/22), 352 So.3d 1023, 1027.

## MEDICAL MALPRACTICE

To establish a claim for medical malpractice, a plaintiff must prove the following by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury. See La. R.S. 9:2794(A); **Schultz v. Guoth**, 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1006.

In motions for summary judgment in the context of medical malpractice, the burden of proof does not require that the medical care provider disprove medical malpractice, but only that the medical care provider raise as the basis of its motion that the plaintiff cannot support his burden of proof at trial to demonstrate medical malpractice. See **Samaha v. Rau**, 2007-1726 (La. 2/26/08), 977 So.2d 880, 887-88; **Methvien v. Our Lady of the Lake Hospital**, 2022-0398 (La. App. 1 Cir. 11/4/22), 354 So.3d 720, 723-24. Once the medical care provider has made a *prima facie* showing that the motion should be granted, then the burden shifts to the plaintiff to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1). See also **Samaha**, 977 So.2d at 887-88.

It is well established that to meet the burden of proof in a medical malpractice action, the plaintiff generally is required to produce expert medical testimony.[3] **Methvien**, 354 So.3d at 724. The jurisprudence has held that this requirement of producing expert medical testimony is especially necessary when the defendant has filed a motion for summary judgment and supported such motion with expert opinion evidence that the treatment met the applicable standard of care. **Boudreaux v. Mid-Continent Casualty Company**, 2005-2453 (La. App. 1 Cir. 11/3/06), 950 So.2d 839, 844, writ denied, 2006-2775 (La. 1/26/07), 948 So.2d 171.

---

[3] Notably, the jurisprudence recognizes limited exceptions to the requirement of expert testimony in those instances where the claim arises out of an "obviously careless act" from which a lay person can infer negligence. **Pfiffner v. Correa**, 94-0924 (La. 10/17/94), 643 So.2d 1228, 1233-34.

The opinion of the medical review panel is admissible expert medical evidence that may be used to support or oppose any subsequent medical malpractice suit. See La. R.S. 40:1231.8(H); **Methvien**, 354 So.3d at 724. In the context of a motion for summary judgment, such evidence may suffice to constitute a *prima facie* case that no issues of material fact exist. See **In re Medical Review Complaint by Downing**, 2021-0698 (La. App. 4 Cir. 5/26/22), 341 So.3d 863, 870; **Methvien**, 354 So.3d at 724. Once the medical care provider has made a *prima facie* showing that the motion should be granted, then the burden shifts to the plaintiff to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. **Mariakis v. North Oaks Health System**, 2018-0165 (La. App. 1 Cir. 9/21/18), 258 So.3d 88, 94.

## DISCUSSION

### Admissibility of the Affidavit of Dr. Donald Harvey Marks

On appeal, Ms. McKay contends that the trial court erred in sustaining North Oaks' objection and finding that the affidavit of Dr. Marks, offered in opposition to North Oaks' motion for summary judgment, was not competent summary judgment evidence. When an objection to an affidavit in support of or in opposition to a motion for summary judgment is made in accordance with La. C.C.P. art. 966(D)(2), the only issue to be determined is whether that affidavit complies with La. C.C.P. art. 967. **Mariakis**, 258 So.3d at 95.

The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under La. C.E. art. 702 and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). Louisiana Code of Evidence article 702(A) permits an expert to testify in the form of an opinion if (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data;

7

(3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. See **Thompson v. Center for Pediatric and Adolescent Medicine, L.L.C.**, 2017-1088 (La. App. 1 Cir. 3/15/18), 244 So.3d 441, 446, writ denied, 2018-0583 (La. 6/1/18), 243 So.3d 1062. In a motion for summary judgment, the reasoning or methodology underlying an expert's opinion are relevant only to determine whether the opinions are admissible under La. C.C.P. art. 967(A) and La. C.E. art. 702. **Thompson**, 244 So.3d at 447.

Affidavits that are devoid of specific underlying facts to support a conclusion of ultimate "fact" are legally insufficient to defeat summary judgment. **Lewis v. Four Corners Volunteer Fire Department**, 2008-0354 (La App. 1 Cir. 9/26/08), 994 So.2d 696, 700. Mere conclusory allegations, improbable inferences, and unsupported speculation will not support a finding of a genuine issue of material fact. **Mariakis**, 258 So.3d at 96. The abuse of discretion standard applies to the trial court's ruling on an objection to a document filed in support of or in opposition to a motion for summary judgment that is raised by a party in a timely filed opposition or reply memorandum in accordance with La. C.C.P. art. 966(D)(2). **Pottinger v. Price**, 2019-0183 (La. App. 1 Cir. 10/23/19), 289 So.3d 1047, 1053.

Ms. McKay argues that Dr. Marks' affidavit met the requirement of La. C.C.P. art. 967 by identifying the medical records he reviewed, setting forth the applicable standard of care, and stating the facts supporting his expert opinion that North Oaks breached the standard of care.

In his four-page affidavit, Dr. Marks set forth his extensive qualifications as an expert in the field of internal medicine, who is board-certified in internal medicine since 1989. Dr. Marks stated that he has worked in various hospitals as a hospitalist since 2012. This includes his experience as the attending Family Medicine Inpatient Service hospitalist and director of the Hepatitis Clinic at Cooper Green Mercy

8

Hospital in Birmingham, Alabama, as well as his experience as the assistant clinical professor in the Division of General Internal Medicine, Department of Medicine, at the University of Alabama at Birmingham. Dr. Marks attested to his familiarity with hospital practices and procedures and the standard of care required of hospitals and the healthcare professionals who work therein.

Prior to rendering an opinion in this matter, Dr. Marks attested that he reviewed the Acadian Ambulance and North Oaks records of Ms. McKay. Dr. Marks established the following chronology of events:

> 7/11/2019 [Ms.] McKay was brought by family to ER extremely confused and disoriented (per Psych Consult)
>
> 7/11/2019 the EMS personnel did not note a head injury.
>
> 7/11/2019 Physician Exam in the ER. Did not document a head injury
>
> 7/11/2019 CT head, ordered for possible stroke, no signif abn (Orders 2)
>
> 7/12/2019 07:13 hr (Neuro consult, Dr. Zapata-Camousano) pg 6/11, 00072
> Exam: NC AT, No temporal tenderness. Normal neuor exam.
> No mention of head trauma
>
> 7/12/2019 07:32 hr (Nursing Note) Knot has developed on pt head going down L side of face and neck
>
> 7/12/2019 07:32 hr (Nursing Note) Patient was seen by Neurology and Psychiatry
>
> 7/12/2019 13:30 hr (Nephrology Consult, K Glover NP)
> PMH: pg 3/14 L corneal abrasion, Head injury – unspecified, seizure lead to fall complication.
> ROS: complains of pain that is mild, complains of mild headache and generalized muscle aches.
> Exam: pg 13/14, 64, overall comfortable. Neuro alert GCS 14 with delayed response
> Skin: there is ecchymosis (bleeding)
>
> 7/13/2019 10:29 hr Psych consult notes L Mixon NP
> ARF, AMS, Possible Opioid OD, Depression, with psychotic features
> Chronic pain, felt secondary to nicked bowel from EGD
> PTSD

9

"By the time I see the patient, there is a large hematoma on her forehead that obviously occurred during some sort of fall." Pg 1/3 65

7/14/2019 A second CT scan was ordered because of "head swelling" (Orders)[.]

7/15/2019 [09:16 hr] **Discharge Note.** Dr. M Drap[cho] Currently complains of mild forehead pain and headache, does have evidence of forehead hematoma. Does not remember falling or head trauma[.]

Dr. Marks opined North Oaks breached the standard of care based on his education, experience, and review of the medical records. Dr. Marks applied the relevant facts in support of his findings, as follows:

1. Ms. McKay was admitted to the hospital on 7/11/2019 with [altered mental status ("AMS")], possible drug O.D., partially responsive to Narcan.

2. EMS and ER did not note head injury at time of admission.

3. Ms. McKay was found with head injury the next morning, 7/12/2019[,] which seems to have occurred after 0713 hr and before 0732 hr[.]

4. There is no documentation of a fall, seizure or head injury in the medical records.

5. Failing to document an in-hospital head injury is a standard of care error[.]

6. Permitting a patient in Ms. McKay's condition to sustain a head injury falls below the standard of care.

Dr. Marks attested that in forming his opinion, he considered the clinical presentation; the medical records; the temporal relatedness; the known pathophysiology of AMS, seizure disorder, and head trauma; his experience as a practicing internal medicine physician and hospitalist; and the lack of a more likely alternative explanation.

On *de novo* review, we find the trial court abused its discretion in excluding Dr. Marks' affidavit setting forth his expert opinions at this stage of the litigation. Although North Oaks argues that Dr. Marks' affidavit offers conclusory legal

determinations and unsupported speculation with no evidentiary basis, we disagree. Dr. Mark's affidavit clearly states that his opinions were rendered therein after reviewing the applicable law and applying the standards applied by board-certified physicians practicing internal medicine. The affidavit further outlines the facts supporting his conclusions and details specific actions taken, or omitted, by North Oaks. We find that Dr. Marks' expert affidavit is sufficient and competent summary judgment evidence. We further find the exclusion of his affidavit at the summary judgment stage would improperly usurp the function of the fact-finder at trial, which is to weigh the evidence and expert opinions in order to determine whether the plaintiff has met her burden of proving causation. See **Carpenter v. Thomas**, 2022-0872 (La. App. 1 Cir. 3/13/23), 362 So.3d 977, 985.[4]

## Analysis after *De Novo* Review

Considering our determination that the trial court abused its discretion in excluding the expert affidavit of Dr. Marks, and considering the affidavit on our *de novo* review, we find Ms. McKay met her burden of producing factual support sufficient to establish the existence of a genuine issue of material fact or that North Oaks is not entitled to judgment as a matter of law.

In support of its motion for summary judgment, North Oaks submitted the certified and signed copy of the MRP opinion and reasons; excerpts of certified Acadian Ambulance records from Ms. McKay's ambulance transport; excerpts of

---

[4] Here, North Oaks objected to the affidavit in accordance with La. C.C.P. art. 966(D)(2). To the extent that North Oaks objected to the qualifications or methodologies applied by Dr. Marks in his affidavit that was offered in opposition to North Oaks' motion for summary judgment, we note that North Oaks failed to file a motion for a pretrial hearing in accordance with La. C.C.P. art. 1425(F). See **Adolph v. Lighthouse Property Ins. Corp.**, 2016-1275 (La. App. 1 Cir. 9/8/17), 227 So.3d 316, 320. We further note that 2023 La. Acts No. 317 § 1 (eff. Aug. 1, 2023) amended La. C.C.P. art. 966(D)(3), which now provides that "[i]f a timely objection is made to an expert's qualifications or methodologies in support of or in opposition to a motion for summary judgment, any motion in accordance with Article 1425(F) to determine whether the expert is qualified or the expert's methodologies are reliable shall be filed, heard, and decided prior to the hearing on the motion for summary judgment." Additionally, 2024 La. Acts No. 371 § 1 (eff. Aug. 1, 2024) amended La. C.C.P. art. 1425(F) to require that a party seeking to challenge whether a witness qualifies as an expert or whether the methodologies employed by the witness are reliable "shall file a motion for a pretrial hearing."

certified North Oaks records from Ms. McKay's emergency room and hospital stay; Ms. McKay's petition for damages; and North Oaks' interrogatories and requests for production of documents. In opposition to North Oaks' motion, Ms. McKay submitted the expert affidavit of Dr. Marks.

The Acadian Ambulance records showed that EMS personnel arrived to Ms. McKay's home on July 11, 2019 at 6:50 p.m. and found her "lying supine in her bed with noted jerking motions." EMS personnel noted that Ms. McKay had a history of seizures and stroke, but her family indicated that she had no deficits from a prior stroke. EMS personnel moved Ms. McKay from her bed, to a stretcher, into an ambulance, and then transported her to the North Oaks emergency room and placed in her in a bed in a designated stroke area in the emergency room "without incident." The Acadian Ambulance records make no mention of any head injury, headaches, or head pain.

Upon admission to the North Oaks emergency room, the ER physician[5] noted on July 11, 2019 at 11:25 p.m. that Ms. McKay presented with a stroke alert and altered mental status. The physical exam of Ms. McKay indicated that her head was "[a]traumatic." A CT head scan showed "no acute abnormality" and was "negative" according to the consultation from the radiologist. The ER physician diagnosed Ms. McKay with unspecified altered mental status, acute renal failure, and an opiate overdose. She was admitted to North Oaks hospital, and her care was transferred to Dr. Michael Drapcho.

On July 12, 2019 at 7:13 a.m., a neurological consulting physician[6] saw Ms. McKay and made no mention of any head injury, headaches, or head pain in his consult notes. On July 12, 2019 at 7:32 a.m., a hospital nurse[7] noted that a "[k]not

---

[5] Dr. Douglas Hill.

[6] Dr. Socrates Zapata-Campusano.

[7] Brittney Burch, R.N.

has developed on [patient's] head going down [left] side of face and neck." On July 14, 2019 at 10:35 a.m., a hospital nurse practitioner[8] wrote in her progress notes that Ms. McKay was "[p]ositive for facial swelling." On July 12, 2019 at 10:56 a.m., a hospital physician[9] noted that Ms. McKay complained of "mild forehead pain and headache, does have evidence of forehead hematoma. Does not remember falling or head trauma." A hospital nurse practitioner[10] saw Ms. McKay on July 12, 2019 at 1:12 p.m., and then noted on July 13, 2019 at 10:29 a.m., "[b]y the time I see the patient, there is a large hematoma to her forehead that obviously occurred during some sort of fall."

Dr. Marks' expert affidavit opined that Ms. McKay did not present with a head injury at the time of her admission to North Oaks hospital according to the EMS and ER records, but was found with a head injury the next morning, which occurred sometime between 7:13 a.m. and 7:32 a.m. on the morning of July 12, 2019. Dr. Marks noted that Ms. McKay's medical records did not document a fall, seizure, or head injury. He opined that failing to document an in-hospital head injury is a breach of a hospital's standard of care. He further opined that permitting a patient in Ms. McKay's condition to sustain a head injury fell below a hospital's standard of care.

Based on the evidence presented in support of and in opposition to North Oaks' motion for summary judgment, we find that there are genuine issues of material fact as to whether Ms. McKay showed any signs of a head injury when she was admitted to the hospital on July 11, 2019, and whether the fall referenced in her medical records—"there is a large hematoma to her forehead that obviously occurred

---

[8] Brittany M. Zimmer, N.P.

[9] Dr. Hugo Valdes.

[10] Kevin Mixon, N.P.

during some sort of fall"—occurred *before* or *during* Ms. McKay's hospitalization. A reasonable fact-finder could conclude that North Oaks breached the applicable standard of care, and that Ms. McKay sustained injury and damages therefrom. The evidence submitted by Ms. McKay in opposition to North Oaks' motion for summary judgment thus creates a genuine issue of material fact precluding summary judgment.[11]

## DECREE

For the foregoing reasons, we reverse the trial court's September 6, 2023 judgment and remand this matter for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

[11] We pretermit discussion of any remaining assignments of error.

14

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 CA 1244

MINNIE JACKSON McKAY

VERSUS

HOSPITAL SERVICE DISTRICT NO. 1 OF TANGIPAHOA PARISH
D/B/A NORTH OAKS HEALTH SYSTEM AND
NORTH OAKS MEDICAL CENTER

**WOLFE, J., DISSENTS AND ASSIGNS REASONS.**

I respectfully dissent, as I would affirm the trial court's grant of summary judgment in favor of North Oaks and the dismissal of Ms. McKay's medical malpractice claims against the hospital. I agree with the trial court's ruling excluding the affidavit of Dr. Marks. The opinions expressed in the affidavit are clearly speculative and conclusory; thus, failing to create a genuine issue of material fact.

Dr. Marks opines that North Oaks breached the standard of care because there is no documentation of a fall in Ms. McKay's medical records. However, there is absolutely no evidence of any fall in the record. Dr. Marks states that Ms. McKay's apparent head injury "*seems* to have occurred" during a nineteen-minute window of time early on the second day of Ms. McKay's hospitalization. It takes more than a mere possibility to prove a fact by a preponderance of the evidence in order to defeat summary judgment. **Talbert v. Restoration Hardware, Inc.**, 2017-0966 (La. App. 1st Cir. 5/31/18), 251 So.3d 532, 539, writ denied, 2018-1102 (La. 10/15/18), 253 So.3d 1304. Affidavits that are devoid of specific underlying facts to support a conclusion of ultimate fact are legally insufficient to defeat summary judgment. **Lewis v. Four Corners Volunteer Fire Department**, 2008-0354 (La. App. 1st Cir. 9/26/08), 994 So.2d 696, 700. The lack of a factual basis for Dr. Marks' conclusions supports the trial court's rejection of his affidavit. See La. Code Evid. art. 702(A)

1

and La. Code Civ. P. art. 967. Moreover, even if the affidavit is considered, the general and speculative observations made by Dr. Marks, without factual evidence of an actual fall, do not support the conclusion that North Oaks breached the standard of care owed to Ms. McKay. Thus, summary judgment against Ms. McKay was proper. For these reasons, I dissent.

2